IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BYRON BUTLER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-530-ALB |
| DAMON DUNN, and LAGUNITA FRANCHISE OPERATIONS, LLC, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the court on Defendants Damon Dunn and Lagunita Franchise Operations, LLC's Renewed Motion to Dismiss. (Doc. 15). Upon consideration, the motion is GRANTED.

## **BACKGROUND**

There are people who love their coffee. And then there are people like Plaintiff Byron Butler. His drink of choice? Hot coffee in his Dunkin' Donuts Refill Cup, with seven creams, seven sugars, seven pumps of French vanilla swirl, and a single pump of caramel swirl. (Doc. 14 ¶10). But Butler's sugary morning ritual ended when the Vaughn Road Dunkin' Donuts began charging Butler and his wife $0.25 for each extra pump of swirl. (Doc. 14 ¶12).

Butler is an African-American man and an investigator at the Alabama Ethics Commission. When he found out about the extra charges, Butler complained. Damon Dunn, the out-of-state manager of the Dunkin' Donuts store in question, later told the *Montgomery Advertiser* that Butler (1) complained that the extra charges were based on his race and (2) misused his position as an investigator to intimidate Dunkin' Donut's employees about the extra charges. The *Montgomery Advertiser* reported Dunn's side of the story as follows:

> When Damon Dunn received notification of a discrimination complaint against his Dunkin' Donuts store on Vaughn Road, he was concerned at first, then confused and then angry.
> It's corporate policy that customer complaints are reviewed and handled in a timely manner, but the majority of those are disgruntled customers upset about a long wait time or food prepared incorrectly.
> "When I saw we had a discrimination complaint, I knew I wanted to personally review this and handle it myself," he said.
> Byron Butler, a man Dunn would learn is an investigator with the Alabama Ethics Commission, accused the store in May of charging black customers more for extra pumps of coffee flavoring known as "swirl" at the restaurant. A claim that Dunn says is unfounded.
> Upset at what Butler perceived as a slight against his race, he then told an employee he was an investigator and took a verbal statement from her about the charging practices at the store. The employee, who is 18, thought she'd face legal trouble if she didn't talk with him.
> Dunn considers that an abuse of Butler's power as a public employee and unethical especially for a man who works with the state's investigating authority on ethical violations.
> "Our public officials have our trust to be fair and honest. They must be held accountable if they abuse their authority to leverage favorable deals from local small business owners if we do not consent to their demands," Dunn said. "Somebody has to hold public officials accountable."
> 75 cents for swirl

> The initial complaint was unclear as a process server emailed a notice to Lagunita Franchise Operations, LLC, the company that owns the Vaughn Road doughnut shop, about the alleged discrimination.
>
> Unsure what the issue was, Dunn reached Butler by phone, during which the investigator allegedly told the owner that he'd been charged more for the flavoring than white customers.
>
> "I simply told him that's not so," Dunn said. "First, I'm black. Why would I tell my employees to discriminate against people who are of the same race as me? Second, the cashiers just push a button on a screen and it charges what it charges. There's no button for black customers and white customers."
>
> Repeated efforts to reach Butler at the number Dunn called and at his office at the commission were unsuccessful.

Kirsten Fiscus, *Dunkin' Donuts Owner Accuses Ethics Commission Investigator of Abuse of Power*, MONTGOMERY ADVERTISER (May 31, 2019), https://www.montgomeryadvertiser.com/story/news/2019/05/31/dunkin-donuts-store-owner-alleges-abuse-power-alabama-ethics-investigator/1284376001/.[1]

Butler says the article is wrong. He alleges in this lawsuit that he wrote Dunn a letter expressing his concerns about the extra charges. But he alleges that the letter did not reference his job with the State or suggest that race had a role in the price

---

[1] The Court may take judicial notice of facts "not subject to reasonable dispute" because they are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"); *see Shahar v. Bowers*, 120 F.3d 211, 214 n.5 (11th Cir. 1997) (denying judicial notice request to accept a fact, rather than to just note media had reported fact). Because the *Montgomery Advertiser* article is the basis for this suit, the Court will take judicial notice of what was reported, but it will not assume that anything in the article is true.

increase. (Doc. 14 ¶¶16–19). He also alleges that he did not intimidate store employees or misuse his position as an investigator.

Dunn filed a complaint against Butler with his employer, the Alabama Ethics Commission, in which he made these charges. (Doc. 14 ¶¶42–44). He gave a copy of his complaint to the *Montgomery Advertiser*, and one of their reporters wrote the story quoted above. (Doc. 14 ¶¶48–49). In response to the *Montgomery Advertiser* article, several anonymous online commenters decided to let the Internet know what they thought of Butler, and they were not kind:

> (a) Eric Johnson
> I believe Mr Investigator Butler needs to be disciplined for impersonating a real officer of the law. While he may be sworn as an investigator of the Ethics Commission, I don't believe the Ethics Commission has any role whatsoever in his issue. After all, the Ethics Commssion (sic) doesn't investigate major ethical crimes, why should they investigate extra costs for excessive cream in the coffee? Sounds to me as though Mr. Butler has gotten a bit too big for his britches.
>
> (b) Sardondi
> Huh. It's almost like a clumsy failed shakedown. And this "interview" of the female employee who was asked to give personal information...I smell a rat. And it's not at Dunkin' D.
>
> (c) Bartholamew
> Reply to @rockfordpi: it sounds like he was using his position as a law enforcement officer/investigator to intimidate the DD employees so that he would be charged less for creamer. He must have shown a badge to get the employee to give a statement, but did not say what agency he worked for.
>
> (d) 6of1

> Typical government employee - think they are above ANY law and that they can treat the people who pay their salaries and unreal benefits as if they were dirt under their feet.
>
> Fire this guy!
>
> (e) Sardondi
> Reply to @UAUKUA: Because he badged her, trying to get a date. And, no, the Ethics Commission has absolutely no authority in this situation. As the investigator Butler well knew, but nonetheless attempted to brazen out.
>
> 3-to-1 the next step was "the hook", in which the investigator offered to "make it all go away". For a consideration.
>
> This is a grotesque abuse of authority, which almost certainly had a corrupt motive behind it. Firing is the only proper response.
>
> (f) Reply to @Goatman: No, this is what Investigator Butler wants store owner Dunn to THINK the Ethcis (sic) Commission investigates. Now, our job is to ask the question, "Why would Butler possibly want to threaten a business owner with 'making trouble' for him?"
>
> And we will be excused if the first answer to pop into our heads is, "Because at some point Butler was going to to (sic) make an extortionate demand for money, goods or services. And try to get a date with the female employee he bullied into giving him personal information."

(Doc. 14 ¶37). Butler alleges these comments caused him "embarrassment, loss of standing in the community, mental anguish, emotional distress[,] and other pain and suffering." (Doc. 14 ¶39). In particular, he alleges that his reputation as an investigator for the Alabama Ethics Commission and as the pastor of a local church has suffered. (Doc. 14 ¶34).

Butler filed this lawsuit against Damon Dunn and the corporate franchisee of the Dunkin Donuts store, Lagunita Franchise Operations, LLC. There are four counts in the operative Amended Complaint. Count One is for slander against Dunn for statements he allegedly made to the *Montgomery Advertiser*. Count Two is slander against Dunn for statements he allegedly made to the Alabama Ethics Commission. Count Three is libel against Dunn based on his written complaint to the Alabama Ethics Commission. Count Four is for conspiracy between Dunn and Lagunita to slander and libel Butler.

## STANDARD

When evaluating a motion to dismiss, the court assumes the factual allegations are true and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "To avoid dismissal the complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). Whether a complaint is plausible depends on whether "it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Dunn argues the Amended Complaint should be dismissed for several reasons. First, Dunn argues that his allegedly false statements are not actionable as defamatory per se and that Butler has not alleged the special damages necessary to maintain an action for defamation per quod. Second, and in the alternative, because everyone agrees Butler is a public officer or official, he can bring a slander or libel action only if the false statements were made with actual malice. Dunn argues that Butler has not alleged sufficient facts to meet that standard. Finally, as to the conspiracy count, Dunn argues that a corporation cannot engage in an actional conspiracy with its employees or officers, an argument to which Butler does not respond.

As explained in more detail below, the Court agrees with Dunn and concludes that the Amended Complaint is due to be dismissed in its entirety. Counts One and Two in the Amended Complaint are due to be dismissed because these counts do not sufficiently plead actionable claims for slander under Alabama law. Count Three pleads an actionable claim for libel under Alabama law, but the Amended Complaint does not sufficiently allege malice, which is necessary because Butler is a public officer or official. Count Four is due to be dismissed because the underlying substantive counts are properly dismissed, and because a corporation cannot conspire with its own officers and employees.

7

### A. Butler Sufficiently Pleads Libel (Count 3) But Not Slander (Counts 1 and 2).

To prevail on any claim for defamation—whether slander or libel—a plaintiff must show the defendant made a false and defamatory statement about the plaintiff to a third person. *Anderton v. Gentry*, 577 So. 2d 1261, 1263 (Ala. 1991). Butler's Amended Complaint identifies two basic statements that he claims are false and defamatory: (1) that Butler complained that the extra charges were due to his race and (2) that Butler misused his position as an investigator in questioning these extra charges. He alleges that Dunn made these statements both orally (slander) and in writing (libel).

Some false statements are actionable without proving special damages (actionable per se), and others require pleading and proving special damages (actionable per quod). *Id.* Special damages must be the "intended result or natural consequence" of the defamatory statement and are generally "limited to 'material loss capable of being measured in money.'" *Butler*, 871 So. 2d at 18 (quoting *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999).

Butler has failed to plead special damages. The sole damages Butler has pleaded are damages to his reputation, as shown by the mean comments responding to the *Montgomery Advertiser* article. The *Montgomery Advertiser's* comment page

encourages "views that foster understanding, insight and civil discourse."[2] But a more accurate header would be Dante's warning: "Abandon every hope, all you who enter." Dante Alighieri, *The Portable Dante* 14 (trans. Mark Musa 2003). Nonetheless, although these Internet comments about Butler were mean-spirited, they do not reflect a measurable, material loss—such as loss of employment or the like.

Because there are no special damages in the Amended Complaint, Butler's slander claims (Counts 1 and 2) rise and fall on whether Dunn's allegedly false statements are slander per se. Slander per se requires the plaintiff to show that the spoken communication involved accusations of infamy or moral turpitude. *Butler*, 871 So. 2d at 17. Infamy is "[a] qualification of a man's legal *status* produced by his conviction of an infamous crime and the consequent loss of honor and credit…." *Cottrell v. NCAA*, 975 So. 2d 306, 345–46 (quoting *Brown v. W.R.M.A. Broad. Co.*, 238 So. 2d 540, 541–42 (Ala. 1970)). Moral turpitude is "an inherent quality of baseness, vileness, depravity." *Id.*

Neither of Dunn's false statements about Butler rise to this level. It is obviously not base or vile for a person to complain about racial discrimination, and Dunn's statement that Butler made that kind of complaint does not rise to the level

---

[2] *See USA Today Network Conversation Guidelines*, Montgomery Advertiser (Oct. 10, 2019) (internal quotations omitted), https://static.montgomeryadvertiser.com/conversation-guidelines/.

of slander per se. On the other hand, Dunn's allegedly false statements about Butler misusing his position as a law enforcement officer are a closer question. Because it is inappropriate for a law enforcement officer to threaten to "make problems for [a] business" or use his position to intimidate a coffee shop's employees, false allegations like these could cause someone like Butler a great deal of reputational damage. But the standard for slander per se is incredibly high. Basically, Alabama law requires a false accusation that someone has committed a particularly heinous felony. And the allegedly false allegations here, although disturbing, do not meet that standard. Both counts of slander are due to be dismissed.

The third count of Butler's complaint alleges libel. Slander is about the spoken word, and libel is about the written word. Because libel is more permanent, the standard for libel per se under Alabama law is lower than the standard for slander per se.[3] It requires a written communication that "directly tend[s] to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood." *Kelly v. Arrington*, 624 So. 2d 546, 549 (Ala. 1993). A written communication does not have to involve widespread publication.

---

[3] There has apparently been a "vigorous[]" and "sharp" debate about whether libel per quod is a proper cause of action. *Restatement (2d) of Torts* § 575 Reporter's Note 3 (1965). The majority common law rule is that "all libel is actionable per se—without proof of special harm." *Id.* §569 Reporter's Note 1. Of course, a majority rule means a minority of states recognize libel per quod, but Alabama has neither recognized it nor condemned it. *Id.* Reporter's Note 8 (citing *Barry College v. Hull*, 353 So. 2d 575 (Fla. App. 1977); *Stearns v. McManis*, 543 S.W.2d 659 (Tex. Civ. App. 1976)). Regardless, Butler's libel claim fails on separate grounds by not sufficiently pleading actual malice, so this vigorous and sharp debate will have to wait for another day.

It may involve a single letter transferred to a third person, such as Dunn's transfer of his written complaint to the newspaper. *Penry v. Dozier*, 49 So. 909 (Ala. 1909) ("There must be a communication to some person other than the plaintiff and defendant. It is not necessary that it be made known to the public generally."). The Court reads the allegedly defamatory statements as "a reader or listener of 'average or ordinary intelligence….'" *Camp v. Yeager*, 601 So. 2d 924, 927 (Ala. 1992) (quoting *Loveless v. Graddick*, 325 So. 2d 137, 142 (Ala. 1975).

Butler sufficiently pleads libel. A false accusation that a law enforcement officer used his badge to intimidate employees over coffee flavoring tends to prejudice that officer's profession and employment. *See Kelly*, 624 So. 2d at 549. Butler pleads that this false accusation was communicated in writing to the *Montgomery Advertiser* when Dunn sent the *Advertiser* a copy of the complaint that he had filed with the Ethics Commission. Although Dunn argues that his written statements are privileged because they were originally made to the Alabama Ethics Commissions, such quasi-judicial privileges are waived when privileged communications are published "outside the circle of those who must have knowledge of them pursuant to the decision-making process." *Webster v. Byrd*, 494 So. 2d 31, 35 (Ala. 1986).

## B. Butler Does Not Sufficiently Plead Actual Malice, which Is Necessary for His Slander and Libel Claims.

As noted above, Butler has pleaded that Dunn communicated a false, libelous statement to the *Montgomery Advertiser*. But, because Butler concedes that he is a public officer or official, his claims for libel and slander also require him to allege that Dunn made this false statement with actual malice. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Mead Corp. v. Hicks*, 448 So. 2d 308, 310 (Ala. 1984). Actual malice is knowledge of a statement's falsity or with reckless disregard of its falsity. *Fulton v. Advertiser Co.*, 388 So. 2d 533, 539 (Ala. 1980) (per curiam) (overruled on other grounds).

Butler's pleading falls short of this standard. Butler has not alleged how Dunn's statements were published with knowledge of their falsity. Instead, he offers only conclusory allegations, which are insufficient to plead actual malice. *See also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) (finding that a plaintiff's complaint using "actual-malice buzzwords" was not sufficient); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012) (conclusory allegations of actual malice were insufficient). The First Amendment protects our right to criticize public officials and government officers, even when that criticism is harsh and unfair. Here, Dunn accurately identified Butler as a government investigator and criticized him for his response to the extra charges because of his government position. Assuming Dunn made some

inaccurate statements about Butler's interactions with coffee-shop employees, those statements "represent[] the sort of inaccuracy that is commonplace in the forum of robust debate to which the [actual malice] rule applies." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984). Accordingly, the Amended Complaint's failure to allege actual malice means that the libel claim in Count 3 should be dismissed and is another reason that the slander claims in Counts 1 and 2 should be dismissed.

### C. The Conspiracy Claim in Count Four is Due to Be Dismissed.

Count 4 alleges a civil conspiracy claim. A conspiracy exists only where there is "(1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013).

Butler's conspiracy claim must be dismissed for two reasons. First, there must be some underlying wrongful act to sustain a conspiracy claim under Alabama law. The Alabama Supreme Court has explained that "[w]here civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *O'Dell v. State ex rel. Patterson*, 117 So.2d 164, 168 (Ala. 1959). There is no underlying wrong here because, as explained above, Butler's slander and libel claims fail. Second, under the intracorporate-conspiracy doctrine, a corporation and its

employees or agents cannot form a civil conspiracy. *See M&F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013); *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). The acts of Lagunita's employees and agents are all attributed to Lagunita. So even if wrongdoing had occurred, there would be no multiplicity of actors necessary for a conspiracy.

## CONCLUSION

The Court respectfully suggests that the parties think twice about whether they want to continue fighting with each other—in court, in the press, or in the Ethics Commission. Life is too short. Or, as Johnathan Swift has written, "[t]he best maxim I know in this life is, to drink your coffee when you can; and when you cannot, to be easy without it …." Letter from Jonathan Swift to Vanessa (July 13, 1722), *in* 2 *Letters, Written By the Late Jonathan Swift*, 297 (John Hawkesworth, ed. 1766). In any event, the motion to dismiss is GRANTED. Because Butler has already amended the complaint once in response to Dunn's original motion to dismiss, there is no reason to grant further leave to amend. The Amended Complaint is DISMISSED WITH PREJUDICE.

**DONE** and **ORDERED** this 20th day of December 2019.

                                                   /s/ Andrew L. Brasher
                                          ANDREW L. BRASHER
                                          UNITED STATES DISTRICT JUDGE